**WASSON & ASSOCIATES, INC.**
David B. Wasson Esq. (Bar No.137075)
1422 Edinger Ave. Suite 230
Tustin, CA 92780
Tel (714) 368-0000/ Fax (714) 368-0033
dwasson@wassonlawyers.com

**LOFTIN|BEDELL P.C.**
L. Sue Loftin, Esq. (SBN: 092016)
Ariel R. Bedell, Esq. (SBN: 228111)
2540 Gateway Road
Carlsbad, California 92009
Tel: (760) 431-2111
Fax: (760) 842-0432
sue@loftinbedell.com
ariel@loftinbedell.com

Attorneys for Plaintiffs, KINGSLEY MANAGEMENT CORP., a Utah corporation, KMC CA Management, LLC, a Utah limited liability company; COUNTRY CLUB LAND - 098, L.P., a Utah limited partnership.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGSLEY MANAGEMENT CORP., a Utah corporation, KMC CA MANAGEMENT, LLC, a Utah limited liability company; and COUNTRY CLUB LAND - 098, L.P., a Utah limited partnership. | Case No. |
| | Judge: |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | 1) **DECLARATORY RELIEF REGARDING PREEMPTION BY MOBILE HOME RESIDENCY LAW, CAL. CIV. CODE §§ 798 ET SEQ., REGARDING JUST CAUSE ORDINANCE** |
| CITY OF SANTA ANA, a municipal corporation, DOES 1-40, INCLUSIVE, | 2) **DECLARATORY RELIEF REGARDING CONFLICTS OF LAW – JUST CAUSE ORDINANCE** |
| Defendants. | 3) **DECLARATORY RELIEF REGARDING VAGUENESS – JUST CAUSE ORDINANCE** |

1

**4) DECLARATORY RELIEF REGARDING CONFLICT OF LAW, PREEMPTION, AND VAGUENESS, REGARDING RENT CONTROL ORDINANCE**

**5) DECLARATORY RELIEF: SUBSTANTIVE DUE PROCESS – RENT CONTROL ORDINANCE**

**6) DECLARATORY RELIEF– RENT CONTROL ORDINANCE – FUTILITY AND UNCONSTITUTIONAL COMPENSATION MECHANISM**

**6) FIFTH AMENDMENT TAKING – RENT CONTROL ORDINANCE**

**7) UNCOMPENSATED PER PE PHYSICAL TAKING IN VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**

**8) UNCOMPENSATED REGULATORY TAKING IN VIOLATION OF THE 5TH AMENDMENT TO THE UNITED STATES (42 U.S.C. §1983)**

**9) UNCOMPENSATED REGULATORY TAKING IN VIOLATION OF ARTICLE I, SECTION 19 OF CALIFORNIA CONSTITUTION**

Demand For Trial By Jury

Plaintiffs, KINGSLEY MANAGEMENT CORP., KMC CA MANAGEMENT, LLC., and COUNTRY CLUB LAND - 098, L.P. (collectively, "**Plaintiffs**"), for their Complaint against the Defendant, City of Santa Ana (hereafter "**Defendant**", "**City**" or "**Santa Ana**"), allege as follows:

2

## INTRODUCTION

1.   This Action presents facial and as applied challenges to the City's adoption of two ordinances as of October 19, 2021:

Ordinance NS-3009, commonly referred to as the Rent Stabilization Ordinance (the "**Rent Control Ordinance**") and

Ordinance NS-3010, commonly referred to as the Just Cause Eviction Ordinance (the "**Just Cause Ordinance**"), and collectively with the Rent Control Ordinance, the "**Ordinances**").  The Ordinances potentially apply to all Residential Rental Units and mobile home spaces in the City of Santa Ana, California.

2.   Plaintiffs contend and assert that the Ordinances and Defendants' enforcement thereof violate Plaintiffs' civil rights and constitutional rights and constitute an uncompensated taking of private property in violation of the Fifth Amendment to the United States Constitution and Article I, Section 19 of the California Constitution, entitling Plaintiffs to payment of just compensation in excess of $10,000,000, according to proof.

3.   Plaintiffs also seek declaratory and injunctive relief for the City's adoption of the vague, preempted, and unconstitutional Ordinances as applicable to mobile home spaces and mobile home parks.

4.   The Plaintiffs own and operate the Country Club Mobile Home Park which is real property located in the City of Santa Ana, California.  They lease to tenants a space, which is only a lot—not a residential rental unit. The lease also includes access to common area improvements and amenities. The lease to the tenants provides them the right to place and maintain a mobile/manufactured home on the space —the residential units and any accessory structures— are the personal property of the tenants.

5.   Plaintiffs have suffered economic losses, damages and harm relating to the Parks as a result of the passage of the Ordinances which have arisen from rental losses for parks owned, operated and/or managed from the date the Ordinances passed through January 14, 2022. Furthermore, the total rent losses are anticipated to increase significantly.

6.    Plaintiffs own and/or operate mobile home parks in the City of Santa Ana, California acquired prior to the adoption of the ordinance, as investment properties, and with no knowledge of any future rent control. The Plaintiffs own the land and common area improvements comprising the mobile home park and rent spaces (also known as lots) to individual tenants who own the personal property mobile/manufactured home located on the space. The residential dwelling unit (the mobile/manufactured home) is owned by the tenants of Plaintiffs and Plaintiffs are not responsible for any aspects of the residential dwelling unit.

7.    The issues and causes of action alleged herein are related only to the operation, ownership and control of mobile home parks.

8.    Plaintiffs seek relief from the Court for the City's adoption of the vague, preempted, and unconstitutional Ordinances as applicable to mobile home parks, in the form of injunctive relief, declaratory relief and compensatory damages.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because the action arises under 42 U.S.C. §1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution.

10. This Court has the authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure.  This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. §1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C.§1988.

11. This Court has subject matter jurisdiction under 28 U.S.C. §1332, which confers original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between …citizens of different States." The amount in controversy exceeds the jurisdictional amount, exclusive of costs and interest.

///

4

12. The Central District of California is the appropriate venue for this Action pursuant to 28. U.S.C. § 1391(b)(1) and (2), because it is in this District that the Defendants reside, maintain offices, exercise their authority in their official capacities and has, in fact, enacted the ordinance for the subject of this Action.

### PARTIES

13. Plaintiff, COUNTRY CLUB LAND - 098, L.P., is now, and at all times relevant to these proceeding and the allegations, assertions and claims in this Complaint, has been, a Utah limited partnership, owning a mobile home park in California, a mobile home park in California, commonly known as "**Country Club Mobile Home Park**."

14. Plaintiff, KMC CA MANAGEMENT, LLC, is now, and at all times relevant to this Complaint has been, a Utah limited liability company, and served as the General Partner of COUNTRY CLUB LAND - 098, L.P.

15. Plaintiff, KINGSLEY MANAGEMENT CORP., is now, and at all times relevant to this Complaint, has been a Utah corporation, and agent of KMC CA MANAGEMENT, LLC, as manager of Country Club Mobile Home Park. KINGSLEY MANAGEMENT CORP together with  KMC CA MANAGEMENT, LLC are referred to in this Complaint as "**Kingsley**" and together with COUNTRY CLUB LAND - 098, L.P., as "**Plaintiffs**").

16. Plaintiffs are informed and believe, and thereupon allege, that Defendant, City of Santa Ana is, and at all times mentioned herein was, a duly incorporated municipal corporation, existing under the law of the State of California, and located within the State of California, in the County of Orange.

17. Plaintiffs do not know the true names and capacities of Defendants Does 1-40, inclusive, and therefore sue these individuals, corporations, public entities, governments, and others by their fictitious names.  Plaintiffs allege that Defendants Does 1-40, inclusive, are jointly, severally and/or concurrently liable and responsible for the injuries set forth herein, acting on their own or as the agents and/or representatives of the named Defendants.  Accordingly, Plaintiffs

PLAINTIFF'S COMPLAINT-CONSTITUTIONAL LAW

will move to amend this Complaint to insert the true names of the fictitiously named Defendants at the time these Doe Defendants are ascertained.

18. Plaintiffs are informed and believe and thereon allege that each Defendant was the agent and/or employee of every other Defendant, and at all times relevant herein, was acting within the course and scope of said agency and/or employment.

**FACTUAL BACKGROUND AND ALLEGATIONS COMMON TO ALL CLAIMS**

19. Plaintiffs are informed and believe and thereupon allege that at the City Council meeting on September 21, 2021, the Santa Ana City Council discussed the City's ability to both regulate rent increases, and the causes and grounds for eviction in residential real property and mobile home parks, for the first time. However, based on information and belief, no specific statistics or study citing mobile home park rent increases or impermissible mobile home park evictions were provided in support of the Ordinances.

20. Plaintiffs are informed and believe and thereupon allege that the City Council members relied, in part, on a written report allegedly submitted by the Assistant City Manager and approved by the City Manager, (herein referred to as the "Staff Report") for the September 21, 2021 City Council meeting. The Staff Report included recommendations such as: the reallocating up to $300,000 of funds intended to provide rent relief to resident impacted by Covid-19 to create an eviction defense fund and hiring consultants at costs currently unknown with the only method to pay for the cost of the implementation of the program by and through the landlords similar to Plaintiff.

21. Plaintiffs are informed and believe and thereon allege that the purported primary purpose of the Rent Control Ordinance was to prohibit increases in rent on residential real property or mobile home spaces in excess of "three percent (3%) or eighty (80%) of the change in the Consumer Price Index, *whichever is less*." Rent Control Ordinance Section 8-1998.1(a). The Rent Control Ordinance further sets out that the City will set forth annually the maximum allowable rent increase per year commencing in June, 2022. Additionally, the Rent Control Ordinance sets out a process for owners to petition the City to seek additional increases in rent

purportedly permitting a fair return on their investment—but with facial flaws that prevent such a return.

22. The Plaintiffs are informed and believe and thereupon allege that the purported primary purpose of the Just Cause Eviction Ordinance was to prohibit and limit evictions of residential tenants by (1) severely limiting the basis for evictions, and as to mobile home parks such limitations are in conflict with California state law as set forth herein, and (ii) redefining the term "change of use" for purposes of requiring relocation benefits as set forth in California Government Code, section 65863.7 in the event one owner of a rental mobile home park sells the park to another owner who intends to maintain the operation of the mobile home park as a rental mobile home park.

23. The Plaintiffs are informed and believe and thereupon allege that at the September 21, 2021 City Council meeting, various speakers noted that the City did not consult individuals representing the City's landlords in advance of bringing forth these proposed Ordinances, and that the City's purported evidence supported that rents in the City had increased between three and four percent in the last five years and had also decreased at other times. Speakers at the meeting additionally called for study of rents.

24. Plaintiffs contend and allege that speakers representing landlords reported that the City's own rent subsidy program had difficulty finding people that met the requirement of the means test for the City's own rent program, because people could afford the rents within the City.

25. The Rent Control Ordinance places severe limitations on the Plaintiff's ability to increase rents, including the ability to increase rents upon termination of an existing tenant's tenancy, and places further restrictions on the termination of tenancy, "…unless [the tenancy is] expressly exempt under the Costa-Hawkins Rental Housing Act codified in Cal. Civ. Code § 1954.50, et seq., or the Mobile home Residency Law codified in Cal. Civ. Code sections 798, et seq." Santa Ana Municipal Code § 8-1998.1(b) and § 8-1998.4(b).

///

///

7

26. As the Costa-Hawkins Act does not apply to mobile home parks, the Rent Control Ordinance limits Plaintiffs' "maximum annual adjustment of residential real property or mobile home space rent of up to three percent (3%) or eighty (80%) of the change in the Consumer Price Index, whichever is less" (but at the amount set annually by the City) without regard to change of ownership or occupancy of a mobile home or a space otherwise becoming vacant.

27. The effect of the Rent Control Ordinance, as it applies to these Plaintiffs, is to allow a tenant within a mobile home park selling their personal property mobile home, the right to also sell an interest in Plaintiffs' land, by selling the right to occupy the land at rents that are below market rate, commonly known as "**Vacancy Control**."

28. Based on information and belief, jurisdictions with rent control restrictions (where Vacancy Control legislation went unchallenged at adoption), saw mobile homes sold at multiples above and beyond their "blue book" value and above and beyond values in non-rent controlled jurisdictions—despite that mobile homes are depreciating personal property which must eventually be replaced, thereby transferring value of the real property to the personal property of the tenants who reside in the Park at the inception of the rent control ordinance, and growing in the years that follow.

29. In the resolution adopting the Rent Control Ordinance, the City cites that: "[i]f Santa Ana renter-occupied households paid thirty percent (30%) of their income on housing, renters would have an extra $176 million dollars of disposable income [which the City defines as income minus housing costs] to spend in the community each year, or $7,000 per household…." Ordinance No. NS-3009, section 1E.

30. The Plaintiffs are informed and believe and thereupon allege that at the September 21, 2021 City Council meeting, Councilmembers dismissed comments from landlords but failed to offer substantive citation of mobile home park rent increases in the last five years, or citation of mobile home park eviction statistics in the City of Santa Ana, and no information was provided by City Staff or other council persons regarding these mobile home park rent increases or eviction statistics upon which to rationally base such conclusions.

31. The Plaintiffs are informed and believe and thereupon allege that at the September 21, 2021 City Council meeting, Councilmembers noted the legislation was being "rushed to the dais" and through an ad hoc process without adequate stakeholder input.

32. The Plaintiffs are informed and believe and thereupon allege that at the September 21, 2021 City Council meeting, City Councilmembers noted that the Ordinances did not have the urgency to justify adoption prior to further analysis and comparison to other cities with rent control.

33. The Plaintiffs are informed and believe and thereupon allege that at the September 21, 2021 City Council meeting, Councilmembers formulated a motion to send the Ordinances back to staff with instructions to obtain further analysis and comparison, to obtain stakeholder input, and to determine the cost of the programs and how to pay for the program; which motion received a second.  However, rather than permit a vote on that motion by the City Council, Councilmembers took a substitute motion to approve the Ordinances, with the comment that the substitute motion would allow time for the City to seek stakeholder input and review of costs; which, if such steps were taken, were not presented at any public meeting. The Ordinances passed for a first reading on September 21, 2021, by a vote of the four members of the City Council.

34. The Plaintiffs are informed and believe and thereupon allege that on October 5, 2021, it was noted that the City received a letter alleging that the actions of the special committee were contrary to the Ralph M. Brown Act, Cal. Gov.  Code § 54950 et seq. (the "**Brown Act**") and its requirements of open meetings, as well as violating the rules of the City's own municipal code concerning special committees of the City Council—and the City Attorney was questioned about whether  it was possible to approve a new "first reading" would "cleanse" the approval of any procedural irregularity from the September 21, 2021 meeting, to which she answered yes.

35. The Plaintiffs contend and allege that the gravamen of the letter to the City was that the landlords and property owners had no advance notice, or inclusion in the ad hoc housing committee, regarding the need, evidence in support, or drafting of the proposed ordinance—in

PLAINTIFF'S COMPLAINT-CONSTITUTIONAL LAW

that it served to deprive the public (and other City Councilmembers) of access and participation in the process as required by the Brown Act and the City's municipal code.

36.  The Plaintiffs contend and allege that on October 5, 2021, the Ordinances passed again for a first reading by a vote of only the four remaining members of the City Council present. As a result, the new "first reading" was October 5, 2021.  Approximately fourteen (14) days after the first reading of the Ordinance, [October 19, 2021], the Ordinances passed with a second reading by a vote of the same four members of the City Council, with effect thirty (30) days later.

37. The Ordinances' stated authority is the City's police power, per Article XI of the California Constitution, and Section 200 of the Santa Ana Charter, as an ordinance and regulation for the public peace, health, and welfare of the City and its residents.

38. The Rent Control Ordinances further stated authority is the City's power to "establish standards for the development of mobile home parks as a type of multiple-family residential development… to be compatible with the Housing Element of the City's General Plan."

39. The Ordinances also make the conclusory allegation that the information provided at the meeting supports the City Councilmembers' findings, despite that the Ordinances were prepared in an ad hoc committee, and based on information and belief, there were no eviction or rent increase statistics provided in support, and all the eviction and rent increase statistics provided did not support adoption of the Ordinances.

40. The Rent Control Ordinance, 8-1998.8 and the Just Cause Ordinance, 8-1997, are penal statutes, in that, as stated in the respective Ordinances: "[i]t shall be unlawful for any person to violate or fail to comply with any provision of the ordinance. The violation of any provision of this ordinance shall first be punished through the use of an administrative citation, as provided in Santa Ana Municipal Code section 1- 21, et seq., prior to prosecution as a misdemeanor or infraction, as provided in Santa Ana Municipal Code section 1- 8."

41. The Ordinances have and will continue to result in a severe diminution in value of the Plaintiffs' Parks in an amount to be proven at trial.

//

**FIRST CAUSE OF ACTION**

**Declaratory Relief Regarding Preemption By Mobile home Residency Law, Cal. Civ. Code §§ 798 et seq., Regarding Just Cause Ordinance**

(***By Plaintiffs against All Defendants***)

42. Plaintiffs incorporate herein by reference as though fully set forth herein the allegations contained in paragraphs 1 through 41 inclusive.

43. The Plaintiffs contend and allege that the Just Cause Ordinance restricts and limits an "Owner" of "residential real property" from terminating a "Tenancy" without just cause grounds and enumerates specific just cause grounds (as each quoted term is defined specifically by the Just Cause Ordinance). The Just Cause Ordinance sets forth: notice requirements that must be distributed to residents; notice requirements for rental agreements; notice requirements for termination of a tenancy; a relocation benefit of three months of the tenant's then current rent, when there is a no-fault just-cause termination; and other terms and restrictions.

44. The Just Cause Ordinance redefines California state law as it relates to a "change of use" of a mobile home park, to include a sale of a mobile home park—even though a sale itself does not allow a change in use, and a mobile home park sold will continue to operate as a rental mobile home park despite the fact that no resident can be subject to a termination of tenancy as a result of a sale.

45. The Mobile home Residency Law, codified in Cal. Civ. Code §§ 798 through 798.88 (the "**Mobile home Residency Law**"), is the body of law that expressly governs the relationship between a mobile home park owner and the residents within the mobile home park. The Mobile home Residency Law includes the following with regards to termination of tenancies within a mobile home park:

      a.  "The Legislature finds and declares that, because of the high cost of moving mobile homes, the potential for damage resulting therefrom, the requirements relating to the installation of mobile homes, and the cost of landscaping or lot preparation, it is necessary that the owners of mobile homes occupied within

mobile home parks be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter." Cal. Civ. Code § 798.55(a).

b. "The management may not terminate or refuse to renew a tenancy, except for a reason specified in this article and upon the giving of written notice to the homeowner, in the manner prescribed by Section 1162 of the Code of Civ. Procedure, to sell or remove, at the homeowner's election, the mobile home from the park within a period of not less than 60 days, which period shall be specified in the notice." Cal. Civ. Code § 798.55(b)(1).

c. "A tenancy shall be terminated by the management only for one or more of the following reasons:" and then proceeds to identify seven reasons for the termination of a tenancy from a mobile home park as the exclusive grounds upon which a tenancy may be terminated. Cal. Civ. Code § 798.56.

46. The Mobile home Residency Law, in Cal. Civ. Code §§ 798.15 through 798.29.6 govern rental agreements and the content thereof between Plaintiffs and tenants. Specifically, but not exclusively:

a. Cal. Civ. Code § 798.15(f) permits a reasonable fee be charged by landowner for services with other permissible charges provided;

b. Cal. Civ. Code § 798.23.5 controls the terms of subletting, including in subsection (c) the formula for the permissible rent the tenant may charge their subtenant;

c. Cal. Civ. Code § 798.34 prohibits a fee for a guest who stays 20 consecutive days or 30 calendar days, but permits a charge for a long-term guest;

d. Cal. Civ. Code § 798.16 specifically preempts conflicting language in the rental agreement: "[t]he rental agreement may include other provisions permitted by law but need not include specific language contained in state or local laws not a part of this chapter.".

12

e.  Cal. Civ. Code § 798.18(a) specifically allows for a long-term lease: "(a) A homeowner shall be offered a rental agreement for (1) a term of 12 months, or (2) a lesser period as the homeowner may request, or (3) a longer period as mutually agreed upon by both the homeowner and management."

47. However, the Just Cause Ordinance:

a.  purports to render existing rental agreements not qualified under Cal. Civ. Code § 798.17 but which provide for separate fees and charges permissible under the Mobile home Residency Law unenforceable;

b.  effectively adopts a conflicting regime for mobile home leases, and then notes "any waiver of the rights under this section shall be void as contrary to public policy" which places the Just Cause Ordinance in direct conflict with permissible measures in the Mobile home Residency Law;

48. The Mobile home Residency Law in Cal. Civ. Code § 798.56(g) sets forth as a basis and procedures for termination of a mobile home space tenancy the "change of use of the park or any portion thereof".  Cal. Civ. Code 798.56(g), referencing Gov.  Code, Title 7, Division 1, Chapter 4, Planning and Zoning, Article 2, § 65837, which defines a change of use in subsection (a) as ... "Prior to the conversion of a mobile home park to another use..., or prior to the closure of a mobile home park or cessation of use of the land as a mobile home park,…" and "requires a report on the impact of the conversion…."

49. However, the Just Cause Ordinance, as discussed below, upends this regime by defining a "change in use" as any sale of a mobile home park, regardless of the status of any change in use.

50. The Plaintiffs contend and allege that the Just Cause Ordinance is a penal statute, which reads in the same form as the Rent Control Ordinance, in Section 8-1997 to the Santa Ana Municipal Code.

///

///

13

51. The forgoing provisions of the Just Cause Ordinance conflict with and are superseded by various state statutes, including without limitation, the Mobile home Residency Law, Cal. Civ. Codes §§ 798 *et seq.*, the Planning and Zoning Law, Cal. Gov. Code, §§ 65800 *et seq.* , and as to mobile home parks, the Tenant Protection Act, AB 1482 as modified by SB 91.

52. These conflicts with California statutory requirements on the Plaintiffs cause confusion, raise the impossibility of compliance with either the statutes or the Ordinances and further deprive Plaintiffs of their due process rights by virtue of its vagueness, rending its breadth and application uncertain; and through its conflict with state law, thereby creating unreasonable uncertainty.

53. By reason of the foregoing, the enforcement of the penal provisions is subject to arbitrary and discriminatory enforcement.

54. Plaintiffs seek a declaration from this Honorable Court that the adoption of the Just Cause Ordinance conflicts with and is superseded by the Mobile home Residency Law to wit:

a. By not including three grounds for termination of a tenancy expressly required and provided for in Cal. Civ. Code § 798.56: "Failure of the homeowner or resident to comply with a local ordinance or state law or regulation relating to mobile homes within a reasonable time after the homeowner receives a notice of noncompliance from the appropriate governmental agency" (Cal. Civ. Code § 798.56(a)); "Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto;" (Cal. Civ. Code § 798.56(d); and "Condemnation of the park" (Ca. Civ. Code § 798.56(f)).

b. By permitting a termination of a tenancy without requiring the length of cure options and notices as is required by the Mobile home Residency Law (Cal. Civ. Code §§ 798.56(e) and 798.56(d);

c. By permitting a termination of a tenancy for grounds not expressly provided for in the Mobile Home Residency Law, including (i) the expiration of the term

14

of a lease; (ii) assignment or subletting of the space (wherein the Mobile home Residency Law has express provisions governing the rights of residents in this regard); (iii)   the tenant refusing the Owner to access the residential real property (which is prohibited under the Mobile Home Residency Law except for in cases of emergency); and (iv) "no-fault just cause" grounds such as the Owner intends to occupy the property for their own or family use, withdrawal of the residential real property from the rental market or substantial renovations of the residential real property.

55. Plaintiffs desire a judicial determination as to the rights, duties, and obligations of the parties with respect to the Just Cause Ordinance as alleged herein. A judicial declaration is necessary and appropriate because an actual controversy exists between Plaintiffs and City, and so that Plaintiffs may assert and ascertain their rights, duties and obligations and avoid potential penalties and civil liability or a potential multiplicity of actions that could arise by violating the terms and provisions of Defendant City's Ordinances.

56. Plaintiffs request a Temporary, Preliminary and Permanent Injunction enjoining the City from enforcing the portions of its Just Cause Ordinance which conflicts with and may be, upon final determination by this Honorable Court, determined to be superseded by State Statutes to provide management and operation consistency with the State Statutes during the pendency of this action.

## SECOND CAUSE OF ACTION

### Declaratory Relief Regarding Conflicts of Law – Just Cause Ordinance

### (*By Plaintiffs against All Defendants*)

57. Plaintiffs refer to, repeat, and incorporate herein by  reference as though fully set forth at length the allegations contained in paragraphs 1 through 56. the

58. Plaintiffs are informed and believe, and thereon allege, that an actual controversy has arisen and now exists between Plaintiffs and City, to wit: the form of the Just Cause Ordinance proclaims that: "[a]ny sale of a mobile home park shall be considered a change of use pursuant to

Gov. Code section 65863.7". However, Cal. Gov. Code § 65863.7 expressly applies only to "to the conversion of a mobile home park to another use…" or "prior to closure of a mobile home park or cessation of use of the land as a mobile home park…".

59. As a result of the City's express reference to Cal. Gov. Code § 65863.7, it is unclear whether the City is then proposing that a private property owner is required to obtain the consent of the City of Santa Ana prior to any sale of a mobile home park, regardless of any actual change in use. The language includes without limitation:

> "Accordingly, at least sixty (60) days prior to the sale of a mobile home park, the Owner shall provide notice of such proposed sale to the mobile home park residents and prepare a report, file with the report with the City and distribute the report to the tenants on the impact of the sale of the mobile home park, including a replacement and relocation plan that adequately mitigates the impact upon the ability of any displaced residents of the mobile home park to be sold to find adequate housing in a mobile home park, as applicable, pursuant to the requirements of Government Code section 65863.7."

60. Pursuant to the requirements of Gov. Code § 65863.7, the submittal to the City is required to comply with additional process and procedural requirements therein.

61. As a separate, independent ground, the practical import of declaring any sale of a mobile home park to be a change in use of under Cal. Gov. Code § 65863.7, is to require surrender of the vested right to operate a mobile home park without the essential regulatory nexus of a proposed change in use, from the mere sale or transfer of the park.

///

62. Plaintiffs are informed and believe, and thereon allege, that an actual controversy has arisen and now exists between Plaintiffs and City, to wit: the form of the Just Cause Ordinance uses the term "Owner" and "Tenancy" as expressly defined terms, but which through their incorporation of outside statutes, create an internal inconsistency:

    a.   The Just Cause Ordinance states "(k) For purposes of this Division, the following definitions shall apply: (1) "Owner" and "residential real property" have the same meaning as those terms are defined in Cal. Civ. Code § 1954.51. (2) "Tenancy" means the lawful occupation of residential real property or mobile home space and includes a lease or sublease, as such may be subject to local ordinance pursuant to the terms of the Costa-Hawkins Rental Housing Act, Cal. Civ. Code section 1954.50 et seq., and the Mobile home Residency Law, Cal. Civ. Code Section 798, et seq." Ordinance No. NS-3010, Section 8-1994(k).

    b.   Cal. Civ. Code § 1954.51 read in relevant part: "'Owner'…does not include the owner or operator of a mobile home park, the owner of a mobile home or his or her agent." Cal. Civ. Code § 1954.51(b). Thus, mobile home park owners are specifically excluded from the terms of the Just Cause Ordinance by their own definition, but mobile home park tenancies are incongruously said to be included by the definition of "Tenancy". Accordingly, there exists a conflict between the Just Cause Ordinance and the definitions with which it cites.

63. The Just Cause Ordinance further includes express requirements that an "Owner" must follow when terminating a tenancy, including providing a copy of the termination notice to the City "within five (5) days after service of the notice of termination on the tenant…" Ordinance No. NS-3010, Section 8-1995(a)(4). Sending a copy of the notice to the City regardless of whether the tenant has cured the notice or otherwise vacated the property without the requirement of the Owner proceeding with an unlawful detainer proceeding. The Ordinance's notice requirements

17

now subject all termination notices sent to the City to the California Public Records Act requests allowing the public to access notices of termination sent to tenants which notices are expressly required to include the grounds for termination.  However, California Code of Civil Procedure, section 1161.2 automatically and permanently seals all actions for eviction unless specific criteria are met. The City's ordinance conflicts with the stated purpose behind the adoption of California Code of Civil Procedure, namely, to protect tenants from having unlawful detainer actions become part of the public records and impacting their credit, especially when a tenant may otherwise resolve the unlawful detainer action in a timely manner. Tenants who otherwise comply with a termination notice, timely vacate or timely resolve an eviction proceeding prior to it being open to the public records will now find themselves with their termination being part of the public records thereby potentially impacting their future rental options.

64. Plaintiffs are informed and believe, and thereon allege, that an actual controversy has arisen and now exists between Plaintiffs and City, the City has taken a final action, as of the first, and second reading adoption of the Ordinances, which contradicts the law of the State of California.

65. Plaintiffs are informed and believe, and thereon allege, that the City contends the contrary.

66. Plaintiffs desire a judicial determination as to the rights, duties, and obligations of the parties with respect to the Ordinances as alleged herein. A judicial declaration is necessary and appropriate because an actual controversy exists between Plaintiffs and City, and so that Plaintiffs may assert and ascertain their rights, duties and obligations and avoid potential penalties and civil liability or a potential multiplicity of actions that could arise by violating the terms and provisions of City's Ordinances.

67. Plaintiffs request a Temporary, Preliminary and Permanent Injunction enjoining the City from enforcing the portions of its Just Cause Ordinance which conflict with and may be, upon final determination by this Honorable Court superseded by State statutes to provide management and operation consistency with the State statutes during the pendency of this action.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief Regarding Vagueness – Just Cause Ordinance)**

(*By Plaintiffs against All Defendants*)

68. Plaintiffs refer to, repeat, and incorporate herein by reference as though fully set forth at length the allegations contained in paragraphs 1 through the 67.

69. Plaintiffs are informed and believe, and thereon allege, that an actual controversy has arisen and now exists between Plaintiffs and City.

70. The City adopted a penal statute defining the criminal offense as violation of any provision of the Just Cause Ordinance to be a crime.

71. The City has taken a final action, as of the adoption of the Just Cause Ordinance which is so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement,  to wit:

    a.  The City's Just Cause Ordinance applies "after a tenant has continuously and lawfully occupied a residential real property for thirty (30) days, the Owner of the residential real property shall not terminate the Tenancy without just cause…" (Section 8-1994(a)); however, it later states that the "Owner of any residential real property or mobile home space…" is required to provide specific notices under the Just Cause Ordinance. As used in the Just Cause Ordinance, "Owner" statutorily excludes a mobile home park owner and "residential real property" excludes a mobile home park space, thereby creating confusion and vagueness as to what portions of the Just Cause Ordinance applies to Plaintiffs and similarly situated parties;

    b.  The form of the Just Cause Ordinance uses the term "Owner" and "Tenancy" in direct contradiction, and with such vagueness that it fails to give ordinary people fair notice of its applicability, in that:

        i.  the Just Cause Ordinance states "(k) For purposes of this Division, the following definitions shall apply: (1) "Owner" and "residential real

19

property" have the same meaning as those terms are defined in Civ. Code Section 1954.51. (2) "Tenancy" means the lawful occupation of residential real property or mobile home space and includes a lease or sublease, as such may be subject to local ordinance pursuant to the terms of the Costa-Hawkins Rental Housing Act, Cal. Civ. Code section 1954.50 et seq., and the Mobile home Residency Law, Civ. Code Section 798, et seq."

    ii.  Cal. Civ. Code § 1954.51 reads in relevant part: "'Owner'…does not include the owner or operator of a mobile home park, the owner of a mobile home or his or her agent."  Cal. Civ. Code § 1954.51(b).  Thus, mobile home park owners are specifically excluded from the terms of the Just Cause Ordinance, but mobile home park tenancies are somehow included.

    iii.  Cal. Civ. Code § 1954.51 reads in relevant part: "Residential real property" includes any dwelling or unit that is intended for human habitation" and notably, Plaintiffs, as owners and operators of a mobile home park, do not own the dwelling or unit that is used for human habitation; but rather the individual tenant/resident owns the mobile/manufactured home located in the mobile home park.

c.  The form of the Just Cause Ordinance proclaims that: [a]ny sale of a mobile home park shall be considered a change of use pursuant to Government Code section 65863.7".  However, Cal. Gov. Code § 65863.7 expressly applies only "to the conversion of a mobile home park to another use…" or "prior to closure of a mobile home park or cessation of use of the land as a mobile home park…."

    i.  As a result, it is unclear whether the City is then proposing that a private property owner in the City, is required to obtain the consent of the City of Santa Ana prior to any sale of a mobile home park, regardless of any actual change in use.

20

ii.  "Accordingly, at least sixty (60) days prior to the sale of a mobile home park, the Owner shall provide notice of such proposed sale to the mobile home park residents and prepare a report on the impact of the sale of the mobile home park, including a replacement and relocation plan that adequately mitigates the impact upon the ability of any displaced residents of the mobile home park to be sold to find adequate housing in a mobile home park, as applicable, pursuant to the requirements of Government Code section 65863.7."

iii.  However, the Government Code section referenced applies solely when a mobile home park will be closed or the use changed which requires the termination of the tenancy of the tenants within the mobile home park.

iv.  Further, the Government Code § 65863.7 includes provisions relating to the approval of the "change of use" by the applicable governmental body thereby creating vagueness as to whether the City intends to require a permit or other approval prior to the sale of an investment property within the City that will otherwise remain a rental property.

72.  The Plaintiffs contend and allege that the practical impact of the Just Cause Ordinance is to deprive Plaintiffs of their due process rights: through its vagueness, rending its breadth and application uncertain; and through its conflict with state law, creating uncertainty. For example, the Just Cause Ordinance requires preparation and approval of a tenant impact report and public hearing *prior to the sale of any mobile home park in the City*, even if no change in use is considered or proposed. This extreme restraint on alienation occurred as a result of an oral amendment at the City Council hearing, without consideration of any rational basis for such a

regulation, much less the regulatory nexus for why the vested right to operate a mobile home park could be surrendered from a mere sale of the property that does not change its use.

73. The Plaintiffs contend and allege that the conflict between and/or preemption of state statutes with provisions of the Just Cause Ordinance further deprive Plaintiffs of their due process rights: through its vagueness, rending its breadth and application uncertain; and through its conflict with state law, creating uncertainty.

74. By reason of the foregoing, the enforcement of the penal provisions is subject to arbitrary and discriminatory enforcement.

75. Plaintiffs are informed and believe, and thereon allege, that the City contends to the contrary, without limitation: that the Just Cause Ordinance is intended to apply to all mobile home parks despite the express definitions used in the Just Cause Ordinance;

     a.   That the property owner is required to obtain the consent of the City of Santa Ana prior to any sale of a mobile home park, regardless of any actual change in use;

     b.   That the Just Cause Ordinance is not vague;

     c.   That the Just Cause Ordinance does not subject those controlled to arbitrary and discriminatory enforcement;

     d.   That the conflict and/or preemption of the state statutes with provision of the Just Cause Ordinance do not deprive Plaintiffs of their due process rights as set forth above.

76. Plaintiffs desire a judicial determination as to the rights, duties, and obligations of the parties with respect to the Just Cause Ordinance, as alleged herein. A judicial declaration is necessary and appropriate because an actual controversy exists between Plaintiffs and City, and so that Plaintiffs may assert and ascertain their rights, duties and obligations and avoid potential penalties and civil liability or a potential multiplicity of actions that could arise by violating the terms and provisions of Defendant City's Ordinances.

///

PLAINTIFF'S COMPLAINT-CONSTITUTIONAL LAW

77. Plaintiffs request a Temporary, Preliminary and Permanent Injunction enjoining the City from enforcing the portions of its Just Cause Ordinance which conflict with and may be, upon final determination by this court superseded by State Statutes to provide management and operation consistency with the State statutes during the pendency of this action.

### FOURTH CAUSE OF ACTION

***Declaratory Relief Regarding Conflict of Law, Preemption, and Vagueness, Regarding Rent Control Ordinance***

(***By Plaintiffs against All Defendants***)

78. Plaintiffs incorporate herein by reference as though fully set forth herein the allegations contained in paragraphs 1 through 77 inclusive.

79. Mobile home Parks are regulated under the  Mobile home Parks Act, Cal. Health and Safety Code §§ 18200 et seq.,  (the "**Mobile home Parks Act**"), and implementing regulations in Title 25, 25 Cal. Code of Regulations §§ 1000 et seq. ("**Title 25**"). Mobile homes themselves are regulated under the Manufactured Housing Act, Cal. Health and Safety Code §§ 18000 et seq. The responsibility for the mobile home upkeep and maintenance are the obligation of the mobile home owner/tenant.

80. However, the City, in the Rent Control Ordinance, Section 8-1998.5(b) purports to apply state building code and residential dwelling unit laws to mobile home spaces prohibited by rent increases, whether under the maximum allowable rent increase adopted annually by the City, or any special application, if the owner fails to maintain the mobile home space "incompliance with California Civil Code sections 1941.1 et. seq. and California Health and Safety Code sections 17920.3 and 17920.10."

81. Accordingly, the Rent Control Ordinance itself is in direct, irreconcilable conflict with the preemptory state regime governing mobile home park construction and operation.

82. The Mobile home Residency Law is the body of law that expressly governs the relationship between a mobile home park owner and the residents within the mobile home park. The Mobile home Residency Law includes

23

     a.  Cal. Civ. Code §§798.15 through 798.22 regulating the rental agreement and the terms and conditions thereof between a tenant and the owner of the mobile home park;

     b.  Cal. Civ. Code §§798.23.5 regulating a tenant's ability to sublease and the fees and charges a tenant may charge to a subtenant for the sublease;

     c.  Cal. Civ. Code §§798.30 through 798.39.5 regulating rental fees and incidental charges that are permissible, such as fees for additional guests and incidental service charges; and

     d.  Cal. Civ. Code §§798.40 through 798.44 regulating utilities in a mobile home park including the manner of billing and charging residents for the costs of the utilities.

However, despite the Mobile home Residency Law, Rent Control Ordinance, section 8-1998.7 defines Rent for this the purpose of the Ordinance to "mean all periodic payments and all nonmonetary consideration, including, but not limited to, the fair market value of goods or services rendered to or for the benefit of the owner under an agreement concerning the use or occupancy of residential real property or mobile home space, including all payment and consideration demanded or paid for parking, pets, furniture, subletting and security deposits for damages and cleaning."

Rental or lease agreements often create a broad definition, within the terms of the document, of the term "Rent" to mean all sums due to the owner under the rental agreement and may include, in the case of a mobile home park, the base monthly rent, plus the charges for utilities, additional guests, late fees, fees for returned check, parking, storage and other incidental service charges expressly permitted under the Mobile home Residency Law.

83. The Rent Control Ordinance purports to make an increase in "all periodic payments" potentially including security deposits, parking, pets, subleasing purportedly for increased utility charges and similar costs and fees as goods or services rendered to or for the tenant that are

charged to a tenant be the included as "Rent" contrary to the provisions of the Mobile home Residency Law.

84. The Rent Control Ordinance purports to render existing rental agreements not qualified under Cal. Civ. Code § 798.17 but which provide for separate fees and charges, such as allocation of utility fees, guest fees and other service charges, which are permissible under the Mobile home Residency Law, to now be unenforceable.

85. Cal. Civ. Code § 798.18(a) specifically allows for a long-term lease: "(a) A homeowner shall be offered a rental agreement for (1) a term of 12 months, or (2) a lesser period as the homeowner may request, or (3) a longer period as mutually agreed upon by both the homeowner and management." However, the Ordinance effectively adopts a conflicting regime for mobile home leases, and then notes "any waiver of the rights under this section shall be void as contrary to public policy."

86. The Rent Control Ordinance expressly regulates "increases in rent on residential real property or mobile home spaces. Ordinance No. NS-3009, Section 8-1998.1(a); however, elsewhere in the Rent Control Ordinance provides exemptions based on tenant specific or housing specific factors and provides specific requirements for notices and leases which are tenant specific. The Rent Control Ordinance is vague and unclear as to whether it regulates increases in rent for a tenant so long as a tenant is within the particular residential real property or the mobile home space or whether the caps on the increases in rent apply to the residential real property or mobile home space separate and apart from the tenancy thereby also prohibiting increases upon the change of tenancy (i.e. Vacancy Control).

87. The Plaintiffs contend and allege that the State statutes' conflict with and/or preemption of provisions of the Rent Control Ordinance as set forth herein deprive Plaintiffs of their due process rights: through vagueness, rending its breadth and application uncertain; and through conflict with state law, creating uncertainty as to the enforcement of the Rent Control Ordinance. Accordingly, the Plaintiffs request a declaration from this Court that this conflict renders this provision of the Ordinance unenforceable.

88. By reason of the foregoing, the enforcement of the penal provisions is subject to arbitrary and discriminatory enforcement.

89. Plaintiffs desire a judicial determination as to the rights, duties, and obligations of the parties with respect to the Rent Control Ordinance as alleged herein. A judicial declaration is necessary and appropriate because an actual controversy exists between Plaintiffs and City, and so that Plaintiffs may assert and ascertain their rights, duties and obligations and avoid potential penalties and civil liability or a potential multiplicity of actions that could arise by violating the terms and provisions of Defendant City's Rent Control Ordinance.

90. Plaintiffs seek a specific declaration from this Honorable Court that the adoption of the Rent Control Ordinance conflicts with state law, to wit:

    a.   The Mobile home Parks Act controls the construction, operation, and maintenance of mobile home spaces.

    b.   The Rent Control Ordinance shall be deemed preempted and unenforceable to the extent it conflicts with the Mobile home Parks Act and implementing regulations.

    c.   The Mobile home Residency Law controls the content for rental agreements, including without limitation, the definitions of rent, charges, and fees, and increases in costs of utilities, and thus preempts the express provisions of the Rent Control Ordinance, notwithstanding any "savings" clause therein.

    d.   The existing rental agreements, including month-to-month rental agreements, shall be fully enforceable as to rent, fees and charges, to the extent the rental agreements comply with the Mobile home Residency Law.

    e.   Any inclusion of a residential dwelling unit standard is preempted by the Mobile home Parks Act, to the extent it applies to a mobile home space, including without limitation the prohibitions in Rent Control Ordinance Section 8-1998.5(b).

**FIFTH CAUSE OF ACTION**

*Declaratory Relief: Substantive Due Process – Rent Control Ordinance*

(**By Plaintiffs against All Defendants**)

91. Plaintiffs incorporate herein by reference as though fully set forth herein the allegations contained in paragraphs 1 through 90.

92. The Vacancy Control limitation on adjustment effectively allows mobile home owners to capture the net present value of the reduced land rent in the form of the premium on the sale price of the mobile home, but without some other measure preventing the sale price of the mobile home with such a premium.

93. This means that incumbent mobile home owner-occupants who sell will charge a premium for the benefit of living in the rent-controlled space.

94. This means the difference in value between the rent control rents, and market rate rents, will be transferred from the landlord (i.e. the park owners) to the mobile home owner (i.e. the residents), and the mobile home owner-residents will effectively sell Plaintiff's property and property rights, in conjunction with the sale of the individual mobile home. This transfer of property rights constitutes a taking of property, and the law does nothing to prevent the "key money" aspect of this Vacancy Control in mobile home parks.

95. Plaintiffs are informed and believe, and thereon allege, that the Rent Control Ordinance is not able to address or provide affordable housing as to mobile home park residents, as it will merely transfer the present value of the future rent control to tenants via an increase in the value of their mobile home at sale (rather than the decrease of such an appreciating asset). Those payments, whether coming in terms of a mobile home loan, seller financing, or increased cash for closing will thwart any attempt to limit the market rate for rent.

96. Plaintiffs contend and allege that an actual controversy has arisen and now exists between Plaintiffs and City, the City has taken a final action, as of the adoption, first, and second reading of the Ordinances, which is violative of Plaintiff's constitutional and federal statutory rights as alleged here.

97. Plaintiffs are informed and believe, and thereon allege, that under 42 U.S.C. § 1983, the Rent Control Ordinance constitutes a denial of substantive due process under the United States Constitution:

a. in that it fails to substantially advance a legitimate state interest. Among other things, it fails to solve, address, further, or substantially advance the goal of providing or protecting affordable housing, by merely transferring a property right of owners to tenants and permitting mobile homes to be sold at inflated prices to account for the gap between Vacancy Control mobile home rent spaces, and market rent for mobile home spaces.

b. That the Rent Control Ordinance fails to address or advance its purpose, of preserving or protecting affordable housing as to mobile home parks.

c. The limitations are therefore also arbitrary and capricious.

d. City adoption of the Rent Control Ordinance was unconstitutional and therefore void.

e. the Rent Control Ordinance imposes Vacancy Control, with absence of a mechanism that prevents lessees from capturing the net present value of the reduced land rent in the form of a premium, and thus the Rent Control Ordinance will not substantially further its goal of creating affordable owner-occupied housing constituting a denial of Plaintiffs' Substantive Due Process Rights.

f. The effective transfer of a right to occupy the mobile home space in perpetuity at a reduced rent, to a tenant who can then sell that right to a future tenant and capture that value as an increase in the value of the mobile home, cannot be said to rationally relate to a legitimate government purpose.

98. Plaintiffs are informed and believe, and thereon allege, that the City contends the contrary.

99. Plaintiffs desire a judicial determination as to the rights, duties, and obligations of

PLAINTIFF'S COMPLAINT-CONSTITUTIONAL LAW

the parties with respect to the Ordinances as alleged above. A judicial declaration is necessary and appropriate because an actual controversy exists between Plaintiffs and City, and so that Plaintiffs may assert and ascertain their rights, duties and obligations and avoid potential penalties and civil liability or a potential multiplicity of actions that could arise by violating the terms and provisions of Defendant City's Ordinances.

## SIXTH CAUSE OF ACTION

### *Declaratory Relief– Rent Control Ordinance – Futility and Unconstitutional Compensation Mechanism*

### (**By Plaintiffs against All Defendants**)

100.    Plaintiffs refer to, repeat, and incorporate herein by reference as though fully set forth at length the allegations contained in paragraphs 1 through 99the .

101.    Plaintiffs are informed and believe, and thereon allege, that an actual controversy has arisen and now exists between Plaintiffs and City.

102.    The Rent Control Ordinance sets out a maximum increase on rental rates at 3% per year, regardless of the increases in consumer price index or other operating costs and imposes a costly and burdensome process to seek approval from the City Manager for increases in excess of the annually approved amount.

103.    Plaintiffs must apply to the City for approval for any rent increase in excess of the maximum increase adopted by the City annually, including costs typically exempted from rent control and permitted by the Mobile home Residency Law as discussed above, such as utilities and fees for services.

104.    The Rent Control Ordinance limits Plaintiffs' adjustment of rents of tenants to a maximum annual adjustment of residential real property or mobile home space rent of up to three percent (3%) or eighty (80%) of the change in the Consumer Price Index, whichever is less. For 2021, despite that eighty percent (80%) of the inflation index exceeded three percent (3%), the City only approved a maximum increase of three percent (3%).

///

105.     The Rent Control Ordinance provides that for an increase above the annual maximum  as set out each year by the City but not to exceed three percent (3%), an owner of the residential real property or a mobile home park owner must:

    a.  Submit an application to the City Manager;

    b.  On an application form prescribed by the City Manager;

    c.  The application must be decided by the City Manager, or their designee;

    d.  The applicant shall bear the burden of establishing that a rate increase in excess of that provided in section 8-1998.1 is necessary to provide the applicant with a fair and reasonable return on their property;

    e.  An application must "provid[e] an independent financial report and verified financial data demonstrating that without such an increase, they will not realize a fair and reasonable return on their property;"

    f.  The applicant shall be responsible for all costs associated with the City's review of the Fair Return Petition (in addition to its own costs and experts);

    g.  The Fair Return Petition shall not be processed until the applicant has paid to the City the estimated cost of the complete analysis, including "anticipated costs of review and if the employment of expert(s) will be necessary or appropriate for a proper analysis of the applicant's request…" and "the anticipated costs of employing such expert(s)."

106.     As a result, if a residential real property owner or the owner of the mobile home park fails to meet the extensive and cost prohibitive burdens of the application process:

    a.  The City Manager is prohibited from granting any adjustment of the maximum rent until it receives such a petition from the landlord and considers it.

    b.  The City Manager may refuse adjustment if there are allegations of violations of Cal. Civ. Code §1941.1 et seq., and Cal. Health and Safety Code §§ 17920.3 and 17920.10 as to the mobile home park spaces, notwithstanding that those ordinances are ostensibly inapplicable, and apply to dwelling units, not spaces

regulated by the Mobile home Parks Act and Title 25; and may separately refuse adjustment if there is some other compliance violation (notwithstanding that the enforcement of compliance within a mobile home park is the province of the California Department of Housing and Community Development, per Cal. Health and Safety Code § 18300).

    c.    As a result, there are unavoidable, inherent delays to the fair adjustment of rent requirements, appearing on the face of the Rent Control Ordinance.

107.    The Rent Control Ordinance requires an unnecessarily cumbersome and expensive regime to seek relief from the confiscatory effect of the Rent Control Ordinance, or which otherwise prevents the Plaintiffs from increasing rents to provide a fair rate of return on Plaintiffs' investments, whether due to one or more of the following: (1) an increase in CPI that exceeds the maximum three percent (3%) increase; (2) costs for repairs or capital improvements; (3) changes of ownership; unusually-low reduced rents as of the effective date of the Rent Control Ordinance; (4) increases in utility costs, and other such factors—many of which are outside the control of the owner and which impact market rents.

108.    Further, the express factors the City Manager may consider do not allow for increases in costs actually incurred by an owner of a mobile home park. Namely, the factors expressly set forth in Section 8-1998.3 include only "completion of capital improvements or rehabilitation work related to the residential real property or mobile home space or space" but does not include any common area capital improvements. In a mobile home park, the cost to maintain streets, clubhouses, pools, laundry rooms and utility infrastructure can be extensive but are not expressly allowed to be considered by the City Manager.

109.    Additionally, the factors the City Manager may consider includes "changes in the utility charges or the subject residential real property or mobile home park paid by the applicant, and the extent if any, of reimbursement by tenants." The City Ordinance now requires that any time a local utility provider increases rates, the landlord (park owner) must now submit an extensive and expensive application to the City Manager to increase the cost of pass-through

utility expenses, which is also contrary to and preempted by the Mobile home Residency Law.  In a mobile home park, it is common that the utilities are delivered to the mobile home park in bulk and sub-metered at the local utility rates or charged on a pro rata basis to the individual spaces; with increases from the utility companies passed through to the tenants under the existing rental agreements and the Mobile home Residency Law.

110.   Plaintiffs are informed and believe, and thereon allege, that the City contends the contrary as to the above allegations.

111.   Plaintiffs are entitled to a fair rate of return on their investment in their parks and on capital improvements by the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

112.   Plaintiffs seek a declaratory judgment that as to the Rent Control Ordinance:

a.   the allocation of the City Council's delegation of their police power authority to set rents to a single, unelected, employee is an impermissible delegation of power;

b.   the factors required of a rent application are incredibly costly, time consuming, and unnecessarily limited;

c.   the unnecessarily cumbersome and expensive regime to adjust rents is not reasonably related to the stated purpose of the Rent Control Ordinance;

d.   the compensation mechanism on the face of the ordinance is inadequate and causes a taking, making an application for adjustment of maximum allowable rent futile;

e.   it is certain to deny Plaintiffs a fair rate of return on their investment in their real property and capital improvements;

f.   it is unconstitutional based on each of the above, independent grounds;

g.   it effectively prevents the landlord's recognition of a fair return and causes a taking.

32

**SEVENTH CAUSE OF ACTION**

**The Rent Control Ordinance Is An Uncompensated *Per Se* Physical Taking in Violation**

**of the Fifth Amendment to the United States Constitution – 42 U.S.C. § 1983**

(***By Plaintiffs against All Defendants***)

113.    Plaintiffs refer to, repeat, and incorporate herein by reference as though fully set forth at length the allegations contained in paragraphs 1 through 112the .

114.    The Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides that private property cannot be taken for "public use, without just compensation." This clause has been referred to as the Takings Clause and is designed to prevent  the "Government from forcing some people alone to bear the public burdens which, in all fairness and justice, should be borne by the public as a whole." *Lingle v. Chevron Corp*., 544 U.S. 528, 537 (2005) (quoting *Armstrong v. United States*, 364 U.S. 40, 49.) Physical invasions of private property by governmental entities that effectuate an acquisition of the property for public use fall within the Takings Clause thereby imposing an obligation to provide the owner of that private property just compensation.  *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021).  Accordingly, any state government or governmental entity will be deemed to have committed a physical taking when it either "formally condemn[s] property," "physically takes possession of property without acquiring title to it," or "when it occupies property." *Id*. "These sorts of physical appropriations constitute the clearest sort of taking, and [courts] assess them using a simple, per se rule: The government must pay for what it takes." *Id*. (citations and quotation marks omitted). This rule applies regardless of whether the government "appropriat[es] private property for itself or a third party." *Id*.   The Courts have repeatedly asserted that any "public benefit" derived from a physical taking is simply not relevant to a court's takings analysis: "[O]ur cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal impact on the owner." *Loretto v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419, 435 (1982).

115.    The Ordinances enacted by the City constitute the "physical occupation" falling well within the rule announced by the federal courts and constitute takings for which the City "must pay for what it takes." *Cedar Point Nursery*, 141 S. Ct. at 2071.

116.    Plaintiffs are informed and believe, and thereon allege, that the Rent Control Ordinance interferes with the distinct investment backed expectations of owners of mobile home parks in the City.  In particular, the Rent Control Ordinance effectively condemns a perpetual, below-market lease, transfers it to the initial tenant, and then permits that tenant to sell the lease to future owners with the transfer of their mobile home—tantamount to key money—as the Rent Control Ordinance imposes Vacancy Control.  The Just Cause Eviction Ordinance further interferes with the distinct investment backed expectations of owners of mobile home parks in the City by, among other requirements, that tenants be provided relocation benefits upon the sale of a mobile home park from one rental mobile home park owner to another owner who will maintain the operations as a rental mobile home park thereby placing additional restrictions and City review on the alienation of the real property.  As a result, the character of the government action, and the nature of the regulation are akin to occupation of property, born solely by the landlord, rather than other forms of rent control.

117.    Coupled with the additional restrictions on termination, and the requirement of sizable, lump-sum payouts from the mobile home park owner, to the tenant, to regain possession of the property.

118.    The Rent Control Ordinance purports to allow for an investor to obtain a reasonable rate of return by capping the maximum increase on the amount of rent regardless of the current market conditions such as increases in the consumer price index.

119.    The Rent Control Ordinance purports to allow an owner the right to petition the City for an increase above the maximum amount allowed for specific increases in costs; however, the petition process requires the petitioner to pay all costs of the petition process including costs to obtain independent financial reports and all costs incurred by the City and without allowing such costs to be included in the rental rate increase.

120.    Additionally, the Rent Control Ordinance places a maximum on the rental increase allowed even for utility charges passed through directly to the tenants of an owner, thereby requiring the owner to undergo the burden of the costly petition process to pass along increases in utility costs which the owner has no option but to then absorb.

121.    Further, the Rent Control Ordinance does not include as a factor that the City Manager may consider in deciding a fair rate of return, petition the cost of capital improvements to the common areas of the property. Plaintiffs own and operate mobile home parks which include substantial common area improvements including streets, clubhouses, pools, spas, laundry rooms, bathroom/shower facilities, electrical distribution systems and meters, water distribution lines and meters, sewer facilities and other electrical services which provide services to the individual spaces. By excluding these elements from the petition process, a mobile home park owner is unclear if the City Manager will take into consideration the capital improvements required to be performed by an owner to simply keep the property functioning and providing a save, livable environment for the residents.

122.    The City's stated intent and goal of the Rent Control Ordinance is so that "renters would have an extra $176 million dollars of disposable income…to spend in the community each year…." Rent Control Ordinance, Section 1, Paragraph E. The City's goal is to take rental income from property owners and transfer that to other businesses within the community.  There cannot be claimed to be an "average reciprocity of advantage" where the regulation solely confiscates future rent increases, and thwarts prior, distinct investment-backed expectations.

123.    As a separate, independent ground, Plaintiffs are further informed and believe, and thereon allege, that any "fair return" application provision is inadequate to compensate for the nature and value of the taking, and that fair return application would be futile, given (i) the discretion afforded the City Manager as delegate, agent, and employee of the City Council; (ii) the costly, prohibitive requirements of the myriad of applications and information required; (iii) the exclusion of factors to be considered by the City Manager in the review of the petition, (iv) the inherent delay in requiring rent control petitions prior to the City Manager adjusting maximum

rent, and (v) the fact that the ordinance, on its face, does not require the action on a petition within any period of time.

124.    The Rent Control Ordinance actually imposes the entire burden and expense of the governmental purpose of preserving affordable housing on owners of mobile home parks, without compensation, contrary to the Fifth Amendment.

125.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to declaratory relief determining that the City's Rent Control Ordinance effects a taking of private property under the Takings Clause of the Fifth Amendment to the United States Constitution.

126.    By the Takings Clause of the Fifth Amendment to the United States Constitution the Rent Control Ordinance actually imposes the entire burden and expense of the governmental purpose of preserving affordable housing upon owners of mobile home parks, without compensation, contrary to the Fifth Amendment, and 42 U.S.C. § 1983. See, e.g. *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

127.    The United States Supreme Court has held that takings liability under the Fifth Amendment to the United State Constitution may be redressed under 42 U.S.C. § 1982.  *See Armstrong* at 49.

128.    Plaintiffs seek monetary damages in an amount to compensate them for the taking of their property as described herein, in an amount yet to be ascertained, but to be established at trial, together with attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### *Violation of Civil Rights Under 42 U.S.C. § 1983 – Just Cause Ordinance and Rent Control Ordinance*

### (*By Plaintiffs against All Defendants*)

129.    Plaintiffs refer to, repeat, and incorporate herein by reference as though fully set forth at length the allegations contained in paragraphs 1 through 128.

///

///

36

130.    The Ordinances also constitute a regulatory taking. See *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).  In general, courts will assess whether a governmental action has been effectuated based upon the following factors (1) "the economic impact of the regulation;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and (3) "the 'character of the governmental action.'" *Lingle*, 544 U.S. at 537 (quoting *Penn Central Transp. Co.*, 438 U.S. at 124). This three-part assessment rests heavily upon the economic impact and the degree to which it interferes with legitimate property interests.  *Lingle*, 544 U.S. at 540. 70. The Ordinances and the enforcement thereof have caused a regulatory taking of Plaintiffs' Parks without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution.

131.    The facts alleged herein demonstrate that the economic impact of the Ordinances is severe and harmful to the Plaintiffs, who are contractually entitled to receive rent from tenants on a monthly basis and cannot long survive if tenants are permitted to continue occupying the Parks without Plaintiffs being able to keep up with rising inflation and the cost of doing business for a sustained and indefinite period of time and the economic impact of the Ordinances is sever and harmful to Plaintiffs whose right to alienation of the real property is subject to new, additional, regulatory and financial requirements which substantially impact the ability to sell the property and substantially increases the cost of doing business.

132.    Additionally, the Ordinances have undermined Plaintiffs' "reasonable investment-backed expectations."  Plaintiffs developed and/or purchased their properties with the reasonable expectation they would be able to charge rent for spaces and have legal recourse if tenants failed to pay rent when contractually due or increase rent based on economic conditions. See *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 634–35 (9th Cir. 2020).

133.    Finally, the Ordinances effectuate a physical invasion of private property. *Lingle*, 544 U.S. at 537.  The Ordinances effectively requires the Plaintiffs to allow their tenants to continue to occupy spaces at the Parks for the foreseeable future at rents

37

inconsistent with economic conditions of rising inflation.  These Ordinances are regulations

constituting a "physical invasion" of private property.  See *Penn Central Transport Co.*, 438

U.S. at 124; *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979).

134.    Accordingly, the Ordinances do not serve to balance the "benefits

and burdens of economic life to promote the common good," but rather effectuate a taking of

the private property which, itself demands, just compensation. *Penn Central Trans. Co.,* 438

U.S. at 124.  Consequently, the City's actions constitute a taking and thereby violate the

Takings Clause of the Fifth Amendment causing proximate and legal harm to the Plaintiffs.

135.    Plaintiffs are informed and believe, and thereon allege, that City's actions as set

forth above, constitute state action in violation of 42 U.S.C. § 1983 and thus Plaintiffs are entitled

to just compensation.

136.    As a direct and proximate result of the above-described actions by Defendant,

Plaintiffs have been damaged in an amount yet to be ascertained, but to be established at trial.

137.    Plaintiffs have incurred, and will incur attorney's fees, expert witness fees, and

other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but

which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

## NINTH CAUSE OF ACTION

**Uncompensated Taking in Violation of Article I, Section 19 of the California Constitution**

(***By Plaintiffs against All Defendants***)

138.    Plaintiffs refer to, repeat, and incorporate herein by reference as though fully set

forth at length the allegations contained in paragraphs 1 through 137.

139.    The Takings Clause found in Article I, § 19 of the California Constitution and

proscribes the "taking or damaging" of private property for public use unless "just

compensation" has "first been paid to, or into court for, the owner."

136.    Article I, Section 19 of the California Constitution, mirrors the interpretation and

implementation of the Takings Clause of the Fifth Amendment to the United States

Constitution. See *San Remo Hotel L.P. v. City and Cty. of San Francisco*, 27 Cal.4th 643, 672–

38

79 (2002) (California Supreme Court relying on physical and regulatory takings decisions interpreting federal takings claims to evaluate takings claim asserted under California Constitution).

137.    The Rent Control Ordinances constitute the taking of private property without just compensation in violation of Article I, Section 19 of the California Constitution.

138.    Plaintiffs are entitled to payment of damages arising from the taking pursuant to Article I, Section 19 of the California Constitution.

139.    Plaintiffs have incurred, and will incur attorney's fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of Cal. Code Civ. Proc. § 1036.

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff's prayer for judgment is as follows:

1.  For a declaration by this Court that the actions and positions of City regarding enactment of the Just Cause Ordinance is:

    a.  Preempted by the Mobile home Residency Law, such as:

        i.   by not including three grounds for termination of a tenancy expressly required and provided for in Cal. Civ. Code § 798.56;

        ii.  by not requiring the length of cure options and notices as required by Cal. Civ. Code § 798.56;

        iii. by permitting termination of a Tenancy for grounds not expressly provided for in the Mobile home Residency Law;

    b.  Preempted by other state law, such as:

        i.   Cal. Gov. Code § 65863.7 relating to its internal definitions of change in use, and applicability;

        ii.  Conflicting definitions of Owner and Tenancy in Cal. Civ. Code § 1954.51 and Cal. Civ. Code § 798.

  c.  Lacks a regulatory nexus to require a change in use report and hearing in the event of a mobile home park sale, and lack of rough proportionality to any exaction requiring payment of relocation costs by mere fact of the sale of a mobile home park.

  d.  Unconstitutionally vague, in that:

        i.  The definitions of "Owner" and "Tenancy" conflict, rendering its applicability to mobile home parks uncertain in the face of the direct contradiction.

        ii.  The reference and integration of Cal. Gov. Code § 65863.7 substituting "sale" for "change in use" makes the extent and requirements of that integration incoherent, in that it is intended to provide for a hearing related to the regulation implicit in a zoning change in use application.

        iii.  Appears to present an unreasonable restraint on alienation in requiring a report, City Council hearing, and related process prior to the mere sale of a mobile home park between private parties.

  e.  And as to all of the aforementioned conflicts, vagueness, and/or preemption: subjects those controlled to arbitrary and discriminatory enforcement, and deprives Plaintiffs of their due process rights under the United States Constitution;

**2.** For a declaration by this Court that the actions and positions of City regarding enactment of the Rent Control Ordinance is:

  a.  Preempted by state law in that:

        i.  the Mobile home Parks Act controls the application of construction and safety standards as to mobile home spaces, but the City has chosen to incorporate conflicting and inapposite residential dwelling standards, in Section 8-1998.5(b), as a condition for any rent increase;

    ii.  the Mobile home Residency Law regulates the relationship between landlords and mobile home park tenants, including the contents of rental agreements or leases, and the permissible charges, but the City has chosen to

        1.  adopt a definition of rent in conflict with the Mobile home Residency Law and related permissible charges thereunder,

        2.  purport to render leases compliant with the Mobile home Residency Law, which provide for separate fees and charges, unenforceable;

        3.  adopting a conflicting regime regarding long term leases, and then providing in the Just Cause Ordinance that any conflicting waiver is void.

        4.  attempt to regulate mobile home rental agreements and leases in conflict with the Mobile home Residency Law, which wholly occupies and controls the content of mobile home rental agreements in the state of California.

b.  Unconstitutionally vague, in that:

    i.  the Rent Control Ordinance adopts a definition of rent that conflicts with the Mobile home Residency Law, and which would appear to render rental agreements compliant with state law unenforceable or subject to violation;

    ii.  the City adopts a conflicting standard as to the health and safety of a mobile home space contrary to the Mobile home Parks Act, and Title 25 when considering whether any rent increase is permitted or prohibited;

    iii.  The City purports to recognize citations by the City, when considering whether any rent increase is permitted or prohibited, when the City does not have enforcement authority under the Mobile home Parks Act;

c. And as to all of the aforementioned conflicts, vagueness, and/or preemption: subjects those controlled to arbitrary and discriminatory enforcement, and deprives Plaintiffs of their due process rights under the United States Constitution;

**3.** For a declaration by this Court that the action and positions of the City in adopting the Rent Control Ordinance:

a. Constitutes a denial of Plaintiff's Substantive Due Process Rights under the United States Constitution: with Vacancy Control and/or with the absence of a mechanism that prevents lessees from capturing the net present value of the reduced land rent in the form of a premium,

    i. fails to substantially further its goal of creating affordable owner-occupied housing, while confiscating Plaintiff's property without just compensation; and

    ii. is not rationally related to a legitimate government purpose.

b. Constitutes a denial of Plaintiff's due process rights in that:

    i. the allocation of the City Council's delegation of their police power authority to set rents to a single, unelected, employee is an impermissible delegation of power of the City Council;

    ii. the factors required of a rent application are incredibly costly, time consuming, and unnecessarily limited;

    iii. the unnecessarily cumbersome and expensive regime to adjust rents is not reasonably related to the stated purpose of the Rent Control Ordinance;

    iv. the compensation mechanism on the face of the ordinance is inadequate, making an application for adjustment of maximum allowable rent futile;

    v. it is certain to deny Plaintiffs a fair rate of return on their investment in their real property and capital improvements;

c. Is unconstitutional based on each of the above, independent grounds;

d. Effectively prevents the landlord's recognition of a fair return;

42

e.   Causes a taking without just compensation, on the face of the ordinance.

**4.**  For a declaration by this Court that the actions and positions of City regarding enactment of its Ordinances are unconstitutional under the United States Constitution:

**5.**  A determination that Defendant's Rent Control Ordinance and related actions effected an uncompensated taking of private property, entitling Plaintiffs' to an award of "just compensation" in an amount to be determined at trial;

**6.**   Award Plaintiffs damages arising out of their Section 1983 and constitutional claims, and specifically "just compensation" under the Fifth and Fourteenth Amendments to the United States Constitution, and under Article I, section 19 of the California Constitution.

**7.**  Award Plaintiffs their costs and reasonable attorney's fees and litigation expenses incurred in this action pursuant to 42 U.S.C. § 1988 and Cal. Code Civ. Proc. § 1036;

**8.**  For preliminary and permanent injunctive relief, according to proof.

**9.**  For an award of reasonable attorney fees pursuant to 42 U.S.C. § 1988 and all other applicable statutes.

**10.** For costs incurred in this suit.

**11.** For such other relief as the Court may deem just and proper.

///

///

Dated: January 14, 2022          **WASSON & ASSOCIATES, INC.**

                                              /s/ David B. Wasson
                                      By:   David B. Wasson, Esq.
                                              Attorneys for Plaintiffs


                                      **LOFTIN | BEDELL, P.C.**

                                              /s/ L. Sue Loftin
                                      By:   L. Sue Loftin, Esq.
                                              Attorneys for Plaintiffs

PLAINTIFF'S COMPLAINT-CONSTITUTIONAL LAW