JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGSLEY MANAGEMENT CORP., KMA CA MANAGEMENT, LLC, COUNTRY CLUB LAND – 098, L.P.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF SANTA ANA,<br><br>　　　　　Defendant. | Case No. 8:22-cv-00076-SPG-JDE<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF NO. 77]** |

Before the Court is Defendant City of Santa Ana's ("Defendant") Motion to Dismiss Plaintiffs' Second Amended Complaint. (ECF No. 77 ("Motion")). Having considered the parties' submissions, oral arguments, the relevant law, and the record in this case, the Court GRANTS Defendant's Motion, with prejudice.

I.  **BACKGROUND**

Plaintiffs Kingsley Management Corp. ("Kingsley"); KMC CA Management, LLC ("KMC"); and Country Club Land – 098, L.P. ("Country Club LP," and, together with Kingsley and KMC, "Plaintiffs") are Utah-based entities involved in the ownership of a mobilehome park located in Santa Ana, California, known as "Country Club Mobile Home Park." (ECF No. 76 (Second Amended Complaint ("SAC") ¶¶ 6–8, 15)). Since 2022, Plaintiffs have sought to invalidate on a variety of federal and state law grounds certain

tenant-protection ordinances adopted by Defendant on October 19, 2021. (ECF No. 1). A brief overview of Defendant's ordinances and the procedural history of this lawsuit follows.

On October 19, 2021, after holding several hearings, Defendant's City Council passed Ordinance NS-3009 (the "Rent Stabilization Ordinance" or "RSO") and Ordinance NS-3010 (the "Just Cause Eviction Ordinance" or "JCE," and, together with the "RSO," the "Ordinances") by a vote of four to three. (SAC ¶¶ 1, 20, 22). The RSO, subject to certain exceptions, prohibited landlords from increasing rent by more than three percent or eighty percent of the change of the consumer price index, whichever amount was less, and prohibited landlords from raising rent more than once in any twelve-month period. (*Id.* ¶ 26). The RSO created an application process for lessors who wished to increase rent in excess of the amount otherwise allowed. (*Id.* ¶ 30). Plaintiffs allege that, as result of the RSO, "owners of mobilehome parks were forced to comply with the [purportedly] extensive, time consuming, and cost prohibitive burdens" of this process. (*Id.* ¶ 31). The JCE, among other provisions, required "just cause" to terminate any "tenancy" and required notice be given prior to termination of a tenancy. (*Id.* ¶ 35).

Before Defendant's passage of the Ordinances, Plaintiffs made clear their opposition to the Ordinances, a position Plaintiffs maintain as of the date of this Order. (*Id.* ¶ 24). After registering their displeasure in writing and through appearances at Defendant's City Council meetings, Plaintiffs initiated this lawsuit on January 14, 2022. (*Id.* ¶¶ 24, 41). On July 7, 2022, the then-presiding district court stayed this action on its own motion under the doctrine of *Pullman* Abstention. (ECF No. 34). Plaintiffs appealed this decision. (ECF No. 35). On October 18, 2022, while Plaintiffs' appeal was pending, Defendant passed Ordinance NS-3027 (the "2022 Ordinance"), which amended and superseded the Ordinances. (SAC ¶ 1). On January 17, 2023, Plaintiffs filed an additional lawsuit challenging the 2022 Ordinance. Complaint, *Kingsley Management Corp. v. City of Santa Ana* ("*Kingsley II*"), No. 8:23-cv-00102-SPG-JDE, ECF No. 1.

On September 13, 2023, the Ninth Circuit issued an unpublished memorandum opinion reversing the stay under *Pullman* as an abuse of discretion and remanding the case for further proceedings. *Kingsley Mgmt. Corp. v. City of Santa Ana*, No. 22-55701, 2023 WL 5950599, at *1 (9th Cir. Sept. 13, 2023). The Ninth Circuit also dismissed as moot five out of Plaintiffs' six claims on the grounds that the 2022 Ordinance made it "impossible for a court to grant any effectual relief" because those claims sought only declaratory and injunctive remedies. *Id.* (quoting *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019)). On remand, the district court, over Defendant's objections, permitted Plaintiffs to amend their complaint to assert claims for nominal damages. (ECF No. 75). Plaintiffs filed the operative SAC on March 13, 2024, (SAC), and Defendant filed the instant Motion on March 27, 2024, (Mot.). Plaintiffs opposed on April 15, 2024, (ECF No. 83 ("Opposition")), and Defendant replied in support of the Motion on April 22, 2024, (ECF No. 85). On May 31, 2024, with the Motion still pending, this action transferred to this Court. (ECF No. 90).

## II.   LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Courts are "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must they accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

Defendant raises various challenges to the merits of Plaintiffs' SAC. The Court begins and ends its analysis, however, with Defendant's contention, made more fully in Defendant's motion to dismiss filed in *Kingsley II*,[1] that Plaintiffs have failed to present a "sufficiently concrete" case due to the absence of "any showing that [these] provisions have been applied to any property owners," let alone Plaintiffs. Motion to Dismiss Plaintiffs' First Amended Complaint, *Kingsley II*, ECF No. 41 at 32–33. *See also id.* at 14, 16. In short, review of the SAC reveals an absence of any actual case or controversy within the meaning of Article III.

### A. The SAC Does Not Establish Plaintiffs' Standing

Standing is an essential part of Article III's case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). *See also* U.S. Const. art. III, § 2. "Because Article III limits our jurisdiction to cases and controversies, the 'irreducible constitutional minimum of standing' requires a plaintiff" to establish three factors. *Langer v. Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023) (quoting *Lujan*, 504 U.S. at 560). The plaintiff invoking federal jurisdiction must show it has "(1) suffered an injury in fact, (2) that is

---

[1] This portion of the *Kingsley II* motion to dismiss addresses a cause of action that is identical to the Eighth Cause of Action in the instant lawsuit.

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). These three elements are not "mere pleading requirements," but rather an "indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Additionally, the plaintiff must demonstrate standing separately for each type of injury and form of relief sought in the action. *See Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross."). The requirements of standing "overlap significantly" with those of constitutional ripeness, "which requires that a case present issues that are definite and concrete, not hypothetical or abstract." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 747 (9th Cir. 2020) (internal quotation marks and citation omitted). Indeed, "[c]onstitutional ripeness is often treated under the rubric of standing because ripeness coincides squarely with standing's injury in fact prong." *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (internal quotation marks and citation omitted).

Where a litigant can establish a concrete legal controversy and "a realistic danger" of future harm, standing does not require that party to wait until they are harmed to file suit. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." (internal quotation marks and citation omitted)). But "persons having no fears of state prosecution except those that are imaginary or speculative, are not . . . appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42 (1971). "The mere existence" of statutes or local laws "does not suffice to create a 'case or controversy' within the meaning of Article III." *Jensen v. Nat'l Marine Fisheries Serv. (NOAA)*, 512 F.2d 1189, 1191 (9th Cir. 1975). Instead, "[t]he power of courts . . . to pass upon the constitutionality of acts of Congress arises only when the interests of litigants

require the use of this judicial authority for their protection against *actual* interference." *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89–90 (1947) (emphasis added). "A hypothetical threat is not enough." *Id.* at 90.

In opposition, Plaintiffs contend that "they need not demonstrate they were injured by application of the Ordinances" and that they may pursue their claims even if the Ordinances "were never applied to Plaintiffs." (Opp. at 19–20). Plaintiffs are mistaken. Although the SAC contains allegations concerning the 2022 Ordinance, Plaintiffs confirm in opposition that "[t]his case deals with the ordinances only during the limited period in which they were in effect, and does not relate to any City ordinances that are presently in effect." (Opp. at 11). As Plaintiffs have expressly alleged that the Ordinances are superseded by the 2022 Ordinance, (SAC ¶ 1), there is no credible risk that Defendant will attempt to enforce the Ordinances against them. Accordingly, to continue pursuing their challenge to the Ordinances, Plaintiffs must be able to demonstrate some kind of past injury traceable to Defendant's conduct. *Spokeo*, 578 U.S. at 338. The SAC does not do so, and based on Plaintiffs' representations at oral argument, it cannot do so.

Plaintiffs' First Cause of Action alleges that the JCE violated their due process rights, primarily by purportedly conflicting with certain California state laws. (SAC ¶¶ 46–70). Plaintiffs style this claim as sounding both in substantive and procedural due process. (*Id.* ¶¶ 47–48). But Plaintiffs do not allege that these alleged conflicts injured them. Plaintiffs speculate that the JCE "*could* result in termination of tenancies, confusion by residents on the impact of a sale, and delay, increase of costs, and a stifling of the sale of mobilehome parks within the City." (*Id.* ¶ 59) (emphasis added). They do not allege that any of these potential outcomes materialized for Country Club Mobile Home Park, the mobilehome park Plaintiffs own.[2] Plaintiffs also challenge a notice provision imposed by

---

[2] Although Plaintiffs allege that Country Club Mobile Home Park had to comply with the JCE's reporting requirements, (*id.*), this allegation does not establish that Plaintiffs ever sought to sell their park. Instead, Plaintiffs claim only that, as an abstract matter, they were obligated to follow the law.

the JCE on the grounds that erroneously issued notices might negatively impact tenants' credit scores, (*id.* ¶ 65), but as Plaintiffs are not tenants, they are unlikely to have standing to bring this challenge even if a tenant's credit score was harmed in this way. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (recognizing "usual rule that litigation is conducted by and on behalf of the individual named parties only" (citation omitted)). And although Plaintiffs allege that the Ordinances "placed Plaintiffs at risk of potential violation" of various state and federal laws, (SAC ¶ 67), they do not allege that they ever faced prosecution, either under the Ordinances or under other laws.

Plaintiffs' Second Cause of Action contends that the JCE violated their due process rights by its purported vagueness. (*Id.* ¶¶ 71–80). Where, as here, a plaintiff asserts a facial challenge on vagueness grounds, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 (1982). Because "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness," *Parker v. Levy*, 417 U.S. 733, 756 (1974), courts should "examine the complainant's conduct before analyzing other hypothetical applications of the law," *Vill. of Hoffman Ests.*, 455 U.S. at 495. Plaintiffs contend that the JCE "creat[ed] uncertainty" and assert in conclusory fashion that it caused them "irreparable harm." (SAC ¶¶ 76, 78). The primary focus of the Second Cause of Action is JCE Section 8-1194(i), which imposed notice and reporting requirements for "[a]ny sale of a mobilehome park." (ECF No. 78-2 ("JCE")[3] at 15). But even assuming Plaintiffs are correct that the JCE conflicts with certain California state laws, Plaintiffs do not explain how this provision had any actual impact on their conduct.

Similarly, Plaintiffs' Third Cause of Action alleges that the RSO "allowed for and may have encouraged arbitrary and discriminatory enforcement" because it purportedly

---

[3] As it is well-established that a court may take judicial notice of matters of public record, the Court GRANTS Plaintiffs' request that it take judicial notice of the JCE. *See, e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of . . . matters of public record."); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).

lacked sufficient clarity, but Plaintiffs do not allege that they themselves were ever subject to arbitrary and discriminatory enforcement and indeed concede that the 2022 Ordinance "has effectively provided the Plaintiffs much of the relief they originally sought." (SAC ¶¶ 89, 92).

Plaintiffs' Fourth Cause of Action challenges the RSO's rent control provisions, contending that Defendant imposed "unconstitutional conditions" on Plaintiffs' ability to increase rent. (*Id.* ¶¶ 94–106). Again, however, despite articulating their opposition to the RSO's policy goals in detail, Plaintiffs fail to establish that these provisions had any impact on Plaintiffs over the approximately year-long period during which the Ordinances were in effect. Plaintiffs also admit that Defendant's adoption of the 2022 Ordinance largely remedies their concerns. (*Id.* ¶ 105).

Likewise, Plaintiffs' Fifth Cause of Action, which attacks the RSO's percentage-based rent cap and the process Defendant established to seek an exception, (*id.* ¶¶ 107–18), fails to allege any impact on Plaintiffs. Plaintiffs plead in general terms, contending that "[o]wners of mobilehome parks were forced to comply with . . . the application process," which they allege required "extensive" expenditures of both time and money. (*Id.* ¶ 113). Plaintiffs further allege that the RSO "prevent[ed] Plaintiffs from raising rents to receive a fair return and pass through allowable costs without" participating in this process. (*Id.* ¶ 114). This is not the same, however, as alleging that Plaintiffs ever *actually* sought to raise their rents beyond the amount allowed by the RSO, let alone that they were unable to do so. And, as with Plaintiffs' Third and Fourth Causes of Action, Plaintiffs credit the 2022 Ordinance with "provid[ing] the Plaintiffs much of the relief they originally sought." (*Id.* ¶ 117).

Plaintiffs' Sixth Cause of Action, which contends that these provisions of the RSO constituted a due process violation, (*id.* ¶¶ 119–27), lacks standing for the same reasons.

In their Seventh Cause of Action, Plaintiffs contend that the JCE and RSO constituted due process violations under the California Constitution. (*Id.* ¶¶ 128–32). But they do not allege that they were ever harmed by the Ordinances. Indeed, they do not allege

-8-

that any mobilehome park owner in the City of Santa Ana was ever so impacted—Plaintiffs merely plead that "owners of mobilehome parks . . . were potentially or actually affected by the Ordinances." (*Id.* ¶ 132). This does not present a case of "actual interference," as required under settled federal law. *Mitchell*, 330 U.S. at 89–90.

Finally, Plaintiffs' Eighth Cause of Action asserts that the Ordinances effected an uncompensated taking. (SAC ¶¶ 133–48). Plaintiffs specifically challenge (i) the RSO's process for seeking rent increases greater than the default cap and (ii) the JCE's reporting requirements for sales of mobilehome parks. (*Id.* ¶¶ 138–40). But despite generically alleging that the Ordinances "were akin to occupation of property," Plaintiffs do not establish than any taking occurred.[4] (*Id.* ¶ 141).

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Federal law also recognizes "regulatory takings" that may be compensable where the regulation at issue is "so onerous that its effect is tantamount to a direct appropriation or ouster." *Id.* "When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 475 (2021). "A final decision by the responsible state agency informs the constitutional determination whether a regulation has deprived a landowner of all economically beneficial use of the property, or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred." *Palazzolo v. Rhode Island*, 533 U.S. 606, 618 (2001) (internal quotation marks and citations omitted). Finality is established "[o]nce the government is committed to a position." *Pakdel*, 594

---

[4] In remanding this action, the Ninth Circuit appears to have assumed, without deciding, that Plaintiffs had standing to pursue their takings claim as then formulated. *See Kingsley Mgmt.*, 2023 WL 5950599, at *1 (9th Cir. Sept. 13, 2023) ("This appeal is not entirely moot . . . ."). The issue of standing was not addressed by the parties in their appellate briefing.

U.S. at 479.[5] This requirement ensures that "a plaintiff has actually been injured by the Government's action and is not prematurely suing over a hypothetical harm." *Id.* (internal quotation marks and citation omitted). If attempts to comply with the finality requirement would be futile, finality is not required, but a party cannot rely on this "futility exception until he or she makes at least one meaningful application." *Herrington v. Cnty. of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988).

Here, Plaintiffs have not shown that they ever made a meaningful rent increase application, let alone that Defendant ever arrived at a final decision with that application. And, as for the reporting requirements for mobilehome park sales, Plaintiffs do not allege that they ever sought to sell Country Club Mobile Home Park. Accordingly, their Eighth Cause of Action is not—and never will be—ripe for adjudication.

Throughout the complaint, the only concrete allegation that could be construed as Plaintiffs' harm is that Plaintiffs "found it necessary to engage the services of private counsel to vindicate their rights under the law" and therefore incurred "attorney's fees and litigation expenses." (SAC ¶¶ 70, 80, 93, 106, 118, 127, 148). But if incurring litigation costs sufficed to establish standing, standing would always be found. Here, Plaintiffs have not pleaded a claim or controversy within the meaning of Article III.

B. **Whether to Grant Leave to Amend**

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). In other words, courts should dismiss only those claims that "could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). At the hearing for this Motion, although Plaintiffs discussed the merits of the Ordinances at length, Plaintiffs were unable to identify any actual, concrete injury they suffered during the period of time in which the Ordinances were in effect. When asked directly whether they attempted to raise rents at Country Club Mobile Home

---

[5] Finality does not require a party to exhaust all administrative remedies. *Id.*

1  Park and were precluded from doing so by the Ordinances, for example, counsel for
2  Plaintiffs pivoted from the question, instead arguing that the injury was the theoretical harm
3  to Plaintiffs' ability to contract with third parties.  As the Court previously explained,
4  because the Ordinances are no longer operative, Plaintiffs must be able to demonstrate a
5  past injury.  *Spokeo*, 578 U.S. at 338.  Based on the parties' briefing and oral argument, it
6  is apparent that Plaintiffs cannot do so, rendering amendment futile.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion, with prejudice.

**IT IS SO ORDERED.**

DATED: August 29, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE